# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3693 | **DATE** | 6/25/2003 |
| **CASE TITLE** | Motherway, Glenn & Napelton vs. Nikolai Tehin, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Report and Recommendation to Hon. Elaine E. Bucklo is submitted herewith. For the reasons set out in the Report and Recommendation, reasons above, this court respectfully recommends that, upon the entry of judgment against Defendants, Plaintiff be awarded compensatory damages in the amount of $63,158, plus interest at 5% per annum from April 10, 2001 until the date of judgment, plus punitive damages in the amount of $300,000. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this matter having been concluded, the referral is closed and the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JUN 2 6 2003 date docketed | B1 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 6/25/2003 date mailed notice | |
| mm | courtroom deputy's initials | Date/time received in central Clerk's Office | mm mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
JUN 2 6 2003

| | |
|---|---|
| MOTHERWAY, GLENN & NAPLETON, ) | |
| Plaintiff, ) | Cause No. 02 C 3693 |
| ) | |
| v. ) | Judge Elaine E. Bucklo |
| ) | Magistrate Judge Geraldine Soat Brown |
| NIKOLAI TEHIN, et al., ) | |
| Defendants. ) | |
| ) | |

To: The Honorable Elaine E. Bucklo
United States District Court Judge

### REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

Plaintiff Motherway, Glenn & Napleton, P.P.C.[1] ("Plaintiff") brought a complaint against Nikolai Tehin ("Tehin"), Pamela J. Stevens ("Stevens") and Tehin + Partners, P.C.(collectively "Defendants") for breach of contract, breach of fiduciary duty and conversion. Following the entry of an order finding Defendants in default (Order, Feb. 6, 2003)[dkt # 20], the District Judge referred the case for a prove up of damages. [Dkt # 22.] Plaintiff seeks actual damages of $63,158 and punitive damages of $300,000. For the reasons set out below, this court respectfully recommends that, upon entry of judgment, Plaintiff be awarded compensatory damages of $63,158, and punitive damages of $300,000 for a total of $363,158, as well as prejudgment interest on the compensatory damages at the Illinois statutory rate until the date of judgment.

---

[1] At some time after filing of this case, Plaintiff changed its name to Motherway & Napleton.

1

## PROCEDURAL BACKGROUND

Plaintiff's three-count complaint was originally filed in the Circuit Court of Cook County, and was removed by Defendants to federal court on the basis of diversity of citizenship. [Dkt # 1.] Following removal, Defendants filed an answer to the complaint. [Dkt # 3.] Subsequently, however, Defendants' counsel sought to withdraw on the basis that Tehin and Stevens had failed to disclose pertinent information to him, including the fact that they had been placed on involuntary inactive enrollment by the California Bar. [Dkt # 13.] Defendants' counsel's motion was granted on October 10, 2002, although, in granting the motion to withdraw, the District Judge warned Defendants of the possibility of sanctions if they did not appear for their depositions. (Order, Oct. 10, 2002.) [Dkt # 14.] Plaintiff subsequently moved for sanctions pursuant to Fed. R. Civ. P. 37 on the basis of Defendants' failure to appear for their depositions. (Pl.'s Sanctions Mot. at 2-3.) [Dkt # 15.] Plaintiff sought "an order imposing sanctions on Defendants, including entry of a default judgment." (*Id.* at 3.) Defendants did not respond to the motion, and the District Judge granted Plaintiff's motion, entering an order finding Defendants in default. (Order, Feb. 6, 2003.) The case was referred to this court for prove up of damages.

Pursuant to the referral, this court entered an order setting a hearing on damages for June 5, 2003. [Dkt # 25.] Initially, Plaintiff sought a jury trial on the issue of damages; accordingly, Plaintiff was ordered to submit a pre-trial order and jury instructions. (*Id.*) Plaintiff's counsel served a copy of the order setting the trial date and pre-trial schedule on Defendants at their last known address. [Dkt # 27.] Subsequently, Plaintiff waived a jury trial for the prove up of damages on default, and the case proceeded to a bench trial on damages on the date scheduled, June 5, 2003. [Dkt ## 29, 30.]

Two witnesses testified for Plaintiff at the trial: Robert Glenn ("Glenn"), formerly a principal of Plaintiff, and Nicholas Motherway ("Motherway"), the shareholder of one of the two professional corporations constituting Plaintiff. In addition, Plaintiff submitted the following exhibits which were admitted into evidence: The complaint in this case (Pl.'s Ex. 1); the Attorneys Accounting prepared by Defendants (Pl.'s Ex. 2); demand letters sent by Glenn to Tehin on September 5, 2001 (Pl.'s Ex. 3) and February 19, 2002 (Pl.'s Ex. 4), and by Motherway to Tehin on March 12, 2002 (Pl.'s Ex. 5); and a certified copy of a Decision and Order of Involuntary Active Enrollment of the State Bar Court of California ("California Bar Order")(Pl.'s Ex. 6). No one appeared on behalf of Defendants at the trial on June 5, 2003.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Factual allegations assumed to be true pursuant to the default order.

As discussed above, the District Judge found Defendants to be in default as a sanction pursuant to Rule 37 for Defendants' failure to comply with their discovery obligations. Upon an order of default the factual allegations of the complaint relating to liability are taken as true. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Thus, this court adopts as findings of fact the following allegations from the complaint:

Defendant Tehin was an attorney duly licensed to practice law in the State of California. Defendant Stevens was an attorney duly licensed to practice law in the State of California. Defendant Tehin + Partners was a professional corporation organized and existing under the laws of the State of California. Plaintiff Motherway, Glenn & Napleton, P.P.C., was and remains a partnership of professional corporations duly organized and existing under the laws of the State of

3

Illinois. Defendants Tehin and Stevens were authorized agents and employees of Tehin + Partners, a professional corporation, and/or its predecessor Bostwick & Tehin, a professional corporation.

Prior to February 28, 1996, Tehin contacted Robert J. Glenn of Plaintiff requesting that Plaintiff act as co-counsel and local counsel in a declaratory judgment action then pending in the Circuit Court of Cook County, Chancery Division, Court No. 96 CH 0860, entitled *Skidmore, Owings & Merrill v. Walter H. Costa, et al.*, and to be involved in any other actions arising therefrom. Prior to February 28, 1996, Tehin agreed to compensate Plaintiff for its professional services rendered in connection with that lawsuit at a rate or amount to be determined. On February 28, 1996, Plaintiff, as co-counsel and local counsel, filed an answer to the declaratory judgment action, Circuit Court No. 96 CH 0860, on behalf of the individual defendants in that lawsuit. On February 29, 1996, Plaintiff as co-counsel and local counsel filed a Complaint at Law, Court No. 96 L 2350, entitled *John O. Merrill, et al., v. Skidmore, Owings & Merrill, et al.*, in the Circuit Court of Cook County, Law Division, on behalf of certain individual plaintiffs in that lawsuit arising out of the issues related to the declaratory judgment action. On April 17, 1996, those lawsuits were consolidated by order of Circuit Judge Ian Levin. On April 30, 1996, pursuant to Illinois Supreme Court Rule 707, Circuit Judge Levin granted a motion to admit defendants Tehin and Stevens *pro hac vice* in the consolidated cases of *Skidmore, Owings & Merrill v. Walter H. Costa, et al.*, Court No. 96 CH 860, consolidated with *John O. Merrill, et al., v. Skidmore, Owings & Merrill, et al.*, Court No. 96 L 2350.

From February 1996 through October 2000, when the consolidated actions were voluntarily dismissed upon settlement, Plaintiff continued to act as local counsel and co-counsel. At some time prior to October 2000, Tehin agreed with Plaintiff in principle to share the contingent fee realized

4

in the lawsuits, with 25% of the fee to be paid to Plaintiff for its respective professional services. In consideration of the percentage of attorneys' fees, Plaintiff performed all of the necessary professional services and tasks in representing their mutual clients from 1996 through and including the settlement obtained in October 2000.

On April 10, 2001, Plaintiff received a copy of an Attorneys Accounting prepared by Defendants which revealed the total attorneys' fees realized for legal services of $250,000, 25% of the fees payable to Plaintiff in the sum of $62,500, and reimbursement of expenses incurred by Plaintiff of $658, for a total of $63,158. As of April 10, 2001, the agreement of Defendants to pay to Plaintiff 25% of attorneys' fees realized was reduced to writing in the Attorneys' Accounting distributed to the mutual clients of Defendants and Plaintiff.

Plaintiff made a demand for its agreed share of attorneys' fees and expenses on or about the date of the settlement, October 2000, and thereafter. Subsequent to April 10, 2001, Plaintiff called and left telephone messages for Tehin, demanding payment of the outstanding fees and expenses due. On several occasions since April 10, 2001, Plaintiff sent letters to Tehin demanding payment of the outstanding attorneys' fees and expenses. Notwithstanding the foregoing, the fees and expenses remain unpaid.

Plaintiff has fully performed all of its obligations and agreements under the joint venture agreement and fee-sharing agreement entered into with Defendants, culminating in a settlement of the consolidated actions in October 2000. Defendants, and each of them, failed to perform their obligations and, specifically, failed to pay Plaintiff in a timely manner Plaintiff's share of the fees and expenses recovered in connection with the consolidated actions, specifically, 25% of the total settlement of $250,000 or $62,500 and reimbursement of expenses in the sum of $638 for a total of

5

$63,158. As a consequence of Defendants' actions, Plaintiff has been damaged.

**B. Evidence at the June 5, 2003 hearing.**

At the June 5, 2003 hearing, Robert Glenn testified to the following facts without contradiction. This court finds Glenn's testimony to be credible and additionally finds as follows.

Plaintiff is a law firm specializing in personal injury litigation. In 1996, Glenn was a principal in the firm. In approximately February, 1996, Tehin, who had acted as local counsel for Plaintiff in a previous litigation in California, contacted Glenn requesting that Plaintiff act as co-counsel and local counsel in litigation involving former partners of the architectural firm Skidmore, Owings & Merrill. Tchin said that the matter was on contingent fee, and suggested the same arrangement that had been used in the California litigation in which Tchin had been local counsel, *i.e.*, 25% of the fee. Plaintiff filed an answer to the complaint in the case and also filed a separate action, the two consolidated Circuit Court cases referred to above. From February, 1996 through October, 2000, Plaintiff served as local counsel, attending status hearings, and being involved in discovery and communications. In October 2000, the litigation settled. Glenn requested an accounting from Tehin, and on April 10, 2001, Plaintiff received a copy of the Attorneys Accounting prepared by the Defendants (Pl.'s Ex. 2), which stated that the total attorneys' fees realized for legal services were $250,000, that 25% of the fees ($62,500) was payable to Plaintiff, and that Plaintiff was also entitled to reimbursement of expenses of $658, for a total of $63,158. Glenn testified that the accounting was accurate and prepared with his input. He also testified that none of the money was ever paid to Plaintiff by Defendants.

Glenn testified that after April 10, 2001, he left numerous telephone messages for Tehin,

demanding payment of the fees and expenses due. Glenn sent letters by regular and certified mail to Tehin demanding payment. (Pl.'s Exs. 3, 4.) Glenn never received a response from Tehin.

At the June 5, 2003 hearing, Nicholas Motherway testified to the following facts without contradiction. This court finds Motherway's testimony to be credible and additionally finds as follows.

Motherway testified that on March 12, 2002, he wrote a letter to Tehin demanding payment and threatening litigation. (Pl.'s Ex. 5.) He sent the letter to Tehin by facsimile on March 12, 2002. Tehin called Motherway within a day or two after the letter had been faxed. Motherway testified that in that conversation Tehin acknowledged receiving the letter. Tehin did not dispute the accounting; rather he stated that he had instructed his firm's accounting department to pay the amount due and was surprised to learn that it had not been paid. Motherway testified that Tehin said that the amount would be paid by April 15, 2002. However, no payment was ever received. On April 16, 2002, Motherway authorized the filing of the complaint in this case.

## C. The California Bar Order.

Plaintiff also submitted the California Bar Order (Pl.'s Ex. 6), which was admitted pursuant to Fed. R. Evid. 803(8) and 404(b). The California Bar Order sets out findings of fact and the decision of the California State Bar Court in the matter of the verified application of the California State Bar Counsel seeking the involuntary inactive enrollment of Tehin and Stevens as members of the Bar of the state of California. It is a 36-page decision that concludes by ordering Tehin's and Stevens' involuntary inactive enrollment, based on proof that Tehin and Stevens "committed multiple acts involving moral turpitude and dishonesty, including misappropriating millions of

dollars in client funds, misrepresenting the status of funds, and presenting trust account checks against insufficient funds to clients." (California Bar Order at 1.) The findings of fact by the California Bar Court demonstrate that Tehin and Stevens engaged in a pattern of misappropriating funds belonging to clients and co-counsel, including a Legal Aid agency and its low income clients whom Tehin and Stevens represented as co-counsel (*Id.* at 7-14), and other vulnerable clients, including a developmentally disabled man whose settlement proceeds they misappropriated. (*Id.* at 14-18, 31). Tehin and Stevens gave Legal Aid clients checks from Tchin + Partners' client trust account that were returned for non-sufficient funds. (*Id.* at 10-11.) The California Bar Order states that when clients or co-counsel inquired about the status of payment, "Tehin always presented administrative reasons for his delay." (*Id.* at 10.) Tehin regularly misrepresented that amounts would be paid on a date certain, and they were not paid. (*Id.* at 10-12.) Those facts are significant for this case because they parallel Tehin's response to Motherway's inquiry. The State Bar Court specifically found that Tehin engaged in a pattern of behavior, despite prior professional discipline, civil lawsuits and a criminal investigation. (*Id.* at 31.) As to Stevens, the State Bar Court found a pattern of continued neglect of professional responsibility. (*Id.* at 34.)

## D. Damages proven.

### 1. Actual Damages

Plaintiff claims actual damages of $62,500 in legal fees and $658 in expenses. In light of the undisputed evidence, this court finds that Plaintiff has proven actual damages in the amount of $63,158.

## 2. Pre-Judgment Interest

Under Illinois law, creditors "shall be allowed to receive [interest] at the rate of five (5) per centum per annum . . . on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance . . . and on money withheld by an unreasonable and vexatious delay of payment." 815 Ill. Comp. Stat. § 205/2. The Seventh Circuit has stated that "[p]rejudgment interest is necessary to compensate the victim of a breach of contract or other wrong. . . . If the amount due under a written contract is determinable, so that the defendant can have a good (here a perfect) idea of the amount of prejudgment interest to which he may be liable if he does not resolve the case promptly, the plaintiff is entitled to such interest." *Residential Marketing Group, Inc. v. Granite Investment Group*, 933 F.2d 546, 549-550 (7th Cir. 1991)(applying Illinois law). *Accord Ameritech Information Systems v. Bar Code Resources*, ___ F.3d ___ 2003 WL 21283668 at *4 (7th Cir. June 5, 2003). In this case, the amount due was liquidated as of the date of the Attorneys Accounting prepared by Defendants, and was not disputed. Defendants have simply refused to pay. Prejudgment interest is necessary to compensate Plaintiff fully. This court thus respectfully recommends that any award of damages include prejudgment interest at the statutory rate of 5% from April 10, 2001 to the date of judgment.

## 3. Punitive Damages

Plaintiff seeks punitive damages of $300,000 on the conversion count. This court finds that Plaintiff has established a factual and legal basis for the award of punitive damages, and respectfully recommends that punitive damages in the amount of $300,000 be awarded.

In Illinois, "[i]t has long been established . . . that punitive or exemplary damages may be

awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978) While "traditionally actions for breach of contract have not given rise to claims for punitive damages . . . the general rule had no application where . . . the cause of action is premised upon a separate and independent tort." *Id.* at 360; *Morrow v. L.A. Goldschmidt Associates Inc.*, 492 N.E.2d 181, 184 (Ill. 1986)("An exception to the general rule that punitive damages are not recoverable for breach of contract is when the conduct causing the breach is also a tort for which punitive damages are recoverable.") Punitive damages are available for a claim of conversion. *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). The third count of Plaintiff's complaint alleges that Defendants converted the fees belonging to Plaintiff and refused to pay the fees to Plaintiff although Plaintiff demanded the fees. (Compl. ¶¶ 18-21.)[2]

---

[2] Under Illinois law, on a claim for conversion the plaintiff must show defendant's unauthorized and wrongful assumption of control or ownership over plaintiff's personal property; plaintiff's right in the property; plaintiff's right to immediate possession of the property, absolutely and unconditionally; and plaintiff's demand for possession of the property. *Chicago Dist. Council of Carpenters Welfare Fund v. Gleason & Fritzshall*, 693 N.E.2d 412, 414 (Ill. App. 1998). A claim of conversion will not lie for money represented by a general debt or obligation, instead, it must be shown that the money claimed is capable of being described as a specified chattel. *Roderick Development Investment Co., Inc. v. Community Bank of Edgewater*, 668 N.E.2d 1129, 1134 (Ill. App. 1996)(collecting cases). It is not necessary that the money be specifically earmarked, but the money must be a specified, identifiable fund. *Id.* A specific amount transferred to the defendant from an outside source is sufficiently identifiable. *Id.* at 1135.

In *Sutherland v. O'Malley*, 882 F.2d 1196, 1197-98 (7th Cir. 1989), summary judgment for the defendant was affirmed on a conversion claim brought by one attorney for a share of settlement proceeds held by co-counsel. However, that case was subsequently distinguished by the Illinois Appellate Court in the *Chicago Dist. Council* case on grounds that are applicable here. 693 N.E.2d at 416. The court in the *Chicago Dist. Council* case stated that the plaintiff in *Sutherland* had a claim only for an indeterminate amount of the attorneys' fees because the agreement between counsel was to split the fees equitably based on the effort of each attorney. *Id.* In contrast, the amount held by the defendant in the *Chicago Dist Council* case was subject to an agreement

In the recent case of *State Farm Mutual Automobile Insurance Co. v. Campbell*, \_\_\_U.S.\_\_\_ 123 S. Ct. 1513, 1520 (2003), the Supreme Court applied the rule stated in *BMW of North America v. Gore*, 517 U.S. 559 (1996), that, in considering the appropriateness of an award of punitive damages courts are to consider three factors: the degree of reprehensibility of the defendant's misconduct; the proportionality between the actual or potential harm suffered by the plaintiff and the punitive damages award; and the difference between the damages awarded and the civil penalties authorized or imposed in comparable cases. Considering each of those factors, Plaintiff's request for an award of punitive damages in the amount of $300,000 is appropriate.

### a. Degree of Reprehensibility

The degree of reprehensibility is the most important of the three factors. *State Farm*, 123 S. Ct. at 1521. In evaluating reprehensibility a court must consider whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. . . . It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Id.*

The Court in the *State Farm* case also made clear that, in assessing a defendant's degree of

---

requiring the defendant to reimburse the plaintiff for expenses paid by the plaintiff for benefits received by plaintiff's insured. *Id.* Although the precise amount of those expenses was a question of fact, the agreement adequately described the converted funds. *Id.* In the present case, the precise amount to which Plaintiff is entitled was set out in the Attorneys Accounting prepared by Defendants, and thus, the amount is not indeterminate.

culpability, the finder of fact is not to consider conduct by the defendant that is legal in the state where it was undertaken because that would infringe on the policy choices of other states. *Id.* at 1522-23. In addition, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 1523. Accordingly, to find that a defendant should be punished more harshly as a recidivist, "courts must ensure the conduct in question replicates the prior transgressions." *Id.*

The harm to the Plaintiff in this case was purely economic and there is no evidence that Plaintiff suffered from any particular economic vulnerability. Nor did the Defendants' actions involve health and safety. However, there is evidence that Defendants' conduct was part of a larger pattern of conduct and the result of deliberate action rather than a mere accident or mistake.

That evidence comes in part from the California Bar Order, which was admitted pursuant to Fed. R. Evid. 404(b) as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." As discussed above, the California Bar Order recounts numerous instances between 2000 and 2002 in which Defendants are alleged to have misappropriated or mishandled funds. These actions were wrongful where committed, and many were closely related in time and nature to the conduct of the Defendants toward Plaintiff.

Four of the incidents discussed in the California Bar Order involve, for example, payment to Defendants of funds due to Defendants and other parties, which were then misappropriated by Defendants. In one very similar situation, Defendants, in association with Legal Aid of North Bay, negotiated a two million dollar settlement for a tenants' association. (California Bar Order at 7.) Defendants were paid the entire two million dollars as a trustee. (*Id.*) Tehin cited "administrative

12

reasons" as a justification for the delay in paying Legal Aid or the clients the money due to them. (*Id.* at 10.) Defendants also failed to respond to repeated telephone calls by clients. (*Id.* at 12.) While some money was eventually paid, it subsequently became clear that the individual Defendants had misappropriated approximately 1.3 million dollars of the settlement money. (*Id.* at 13.)

In light of the concern expressed in the *State Farm* decision that punitive damages not be awarded because a defendant is "an unsavory individual or business" (123 S.Ct. at 1523), it is important to make clear that this court recommends that punitive damages be awarded against Defendants in this case because of their conduct toward *this* Plaintiff, not as a punishment for Defendants' conduct toward the other clients and co-counsel discussed in the California Bar Order. That Order is admissible and is considered for the limited purposes permitted under Fed. R. Evid. 404(b) as evidence that Defendants' actions in the present situation were wilful and intentional and part of a larger plan. That evidence demonstrates the reprehensibility of Defendants' conduct here.

In addition to the California Bar Order, other evidence supports the conclusion that Defendants' conduct was not the result of accident or mistake. The Defendants prepared the Attorneys Accounting, thus Defendants were aware of the fees they owed Plaintiff. Plaintiff sent letters and made phone calls to Tehin reminding him of Defendants' obligation to pay. In the one instance when Motherway was able to communicate with Tehin, Tehin stated that Defendants would pay by April 15, 2002. Although aware of the present litigation, Defendants have failed to appear in any of the proceedings before this court since the withdrawal of their attorney. In light of this evidence, this court concludes that Defendants failure to pay was intentional and willful.

Defendants' conduct is particularly reprehensible given their position as lawyers. The lawyer's oath involves a "basic commitment to honesty," *In re Crisel*, 461 N.E.2d 994, 998 (Ill.

13

1984). The individual Defendants have clearly violated that commitment. *See* Ill. Rule Prof. Conduct 8.4(a) (2003)("a lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."). In the *State Farm* case, the Supreme Court reaffirmed the role of punitive damages for the purpose of deterrence and retribution. 123 S. Ct. at 1519. In light of the Defendants' intentional, tortuous conduct, punitive damages are warranted to punish Defendants and to deter them and others from similar conduct in the future.

### b. Reasonableness and Proportionality

The measure of punitive damages must be both reasonable and proportionate to the harm to the plaintiff. *State Farm*, 123 S. Ct. at 1524. "[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* In this case, Plaintiff seeks $63,185 in actual damages and $300,000 in punitive damages, a ratio of less than one to five. Given the nature of Defendants' conduct, the punitive damages in this case appear proportionate to the compensatory damages under the standards set out in the *State Farm* case.

### c. Relationship Between Punitive Damages and Civil or Criminal Penalties

Regarding the third factor, the Supreme Court stated in the *Gore* case that "[c]omparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct" can demonstrate that punitive damages are excessive. 517 U.S. at 583. The Court in the *Gore* case compared a potential civil penalty of $2,000 for violation of the Alabama Deceptive Trade Practices Act to the punitive damages award of $2,000,000. *Id.* at 563, 584. Likewise, the Court in the *State Farm* case was struck by the difference between a potential civil penalty of

14

$10,000 for grand fraud and a punitive damage award of $145 million. 123 S. Ct. at 1526. In both cases the punitive damage award was at least 100 times greater than the possible civil penalty.

In the present case, Plaintiffs have not suggested what comparable civil penalties might be. Considering criminal penalties, conversion closely parallels the crime of theft, which occurs when a person knowingly "obtains or exerts unauthorized control over the property of the owner." 720 ILCS § 5/16-1(a)(1); *See U.S. v. Bach*, 172 F.3d 520, 523 (7th Cir. 1999)("most crimes that cause definite losses to ascertainable victims are also torts: the crime of theft is the tort of conversion . . ."). Under Illinois law, theft of property valued between $10,000 and $100,000 that does not take place in a school or place of worship is a Class 2 felony. 720 ILCS § 5/16-1(b)(5). A corporate defendant convicted of a felony may be sentenced to pay a fine of $50,000 or the amount specified in the offense, whichever is greater. 730 ILCS § 5/5-9-1(a)(1). Individual defendants convicted of a felony can be fined the greater of $25,000 or the amount specified in the offense. *Id.* The ratio between the punitive damage award and the potential criminal penalty in this case would thus be approximately 6 to 1 for a corporate defendant and 12 to 1 for the individual defendants. That ratio is much smaller than the ratio disproved in the *State Farm* and *Gore* cases. Thus, the punitive damage award does not appear disproportionate to other potential criminal sanctions.

In light of the intentional and willful nature of the Defendants' conduct, as part of a plan and pattern of such conduct, and the proportionality of the punitive damages sought by Plaintiff to Plaintiff's compensatory damages, this court respectfully recommends that Plaintiff be awarded $300,000 in punitive damages.

15

## CONCLUSION

For foregoing reasons above, the court respectfully recommends that, upon the entry of judgment against Defendants, Plaintiff be awarded compensatory damages in the amount of $63,158, plus interest at 5% per annum from April 10, 2001 until the date of judgment, plus punitive damages in the amount of $300,000.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

**ENTER:**

*[signature]*

Geraldine Soat Brown
**United States Magistrate Judge**

**Dated: June 25, 2003**